Fred SYKES, Appellant,

v.

UNITED STATES of America,
Appellee.

Thomas RUFFIN, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 16997, 16971.

United States Court of Appeals
Eighth Circuit.

Jan. 17, 1963.

Alphonse J. Lynch, St. Louis, Mo., made argument for the appellant and filed brief.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., made argument for the appellee and D. Jeff Lance, U. S. Atty., was with him on the typewritten brief.

Before JOHNSEN, Chief Judge, and MATTHES and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

Count One of an information filed by the United States Attorney for the Eastern District of Missouri charged that on April 26, 1961, Thomas Ruffin did unlawfully carry a quantity of heroin from Chicago, Illinois, to St. Louis, Missouri, in violation of 26 U.S.C. § 4724(b); and Count Two of the information charged that on the same day Ruffin and Fred Sykes unlawfully concealed heroin in violation of 21 U.S.C. § 174. Tried before a jury, they were found guilty as charged. Ruffin was sentenced to imprisonment for a term of ten years on Count One and a term of thirteen years on Count Two, the latter to run consecutively to the sentence on Count One, or a total of twenty-three years. Sykes was sentenced to imprisonment for a term of eight years. These appeals by Sykes and Ruffin present for determination the question whether the evidence was sufficient to make a submissible case on either of the counts.

The heroin was seized by narcotic agents and a police officer while searching the apartment occupied by Sykes. Appellants attack the legality of the search warrant, claiming that it was issued without probable cause, and also contend that the search warrant was illegally executed. Since the sufficiency of the evidence question depends upon whether the court properly admitted the heroin and certain paraphernalia in evidence, we shall first direct our attention to this issue.

For approximately six months prior to April 21, 1961, Luther Williams had been a Government informer and on that day executed an affidavit for a search warrant in which he stated under oath that "he has reason to believe" that "there is now being concealed * * * in Apartment 703 at 2210 Biddle Street, St. Louis, Missouri * * * a quantity of heroin * * * and supplies and apparatus in connection therewith * * *;" that he "has been in the above described apartment on several occasions and seen heroin produced several times" and that "on April 19, 1961 * * * [he] was present when a quantity of heroin was produced, a portion of it was put in capsule and the remainder returned to a cabinet in this apartment." Based upon the affidavit, the United States Commissioner issued a search warrant on April 21, 1961, authorizing Edward Demorest, a narcotic agent, and any other officers, to search the above designated apartment.

Rule 41(c) of the Fed.R.Crim.P. authorizes a judge or a United States Commissioner to issue a search warrant if he is satisfied that grounds for the application exist or that there is probable cause to believe that they exist. In Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 549, 69 L.Ed. 1032 (1925), the Supreme Court stated:

> "In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched; and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant."

In our view, the instant affidavit was sufficient for the United States Commissioner to determine the existence of probable cause. In summary, the affidavit contained affirmations of fact rather than mere legal conclusions; the affirmations bore logical relevance to the commission of a crime in Apartment 703; Williams, the affiant, had personal knowledge of the facts affirmed; and the matters set out in the affidavit occurred within a reasonable time of the date that the affiadvit was executed. We therefore hold that

the issuance of the search warrant was clearly justified. See United States v. Ramirez, 2 Cir., 279 F.2d 712, 715 (1960), cert. denied, 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74 (1960).

■ As to the execution of the search warrant, appellants contend that the officers violated the provisions of 18 U.S.C.A. § 3109 by entering the apartment in question by force without first identifying themselves and announcing the purpose of their presence. See Jones v. United States, 104 U.S.App.D.C. 345, 262 F.2d 234 (1958), reversed 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), dismissed 368 U.S. 801, 82 S.Ct. 20, 7 L.Ed.2d 15 (1961), conviction affirmed after remand, D.C.Cir., 304 F.2d 381 (1962); Woods v. United States, 99 U.S.App.D.C. 351, 240 F.2d 37 (1956), cert. denied, 353 U.S. 941, 77 S.Ct. 815, 1 L.Ed.2d 760 (1957), cert. denied, Curtis v. United States, 354 U.S. 926, 77 S.Ct. 1385, 1 L.Ed.2d 1438 (1957). This question presented an issue of fact for the trial court to resolve at the pre-trial hearing on the motion to suppress evidence, and we are satisfied from the examination of the record of such hearing that there was substantial evidence to justify the order denying the motion. The record demonstrates that the officers, armed with the search warrant, arrived at the apartment described therein shortly after Luther Williams and appellants had entered the apartment. The officers found the door to the apartment closed but heard sounds from within. One of the agents knocked on the door and stated that they were "federal officers with a search warrant." When they received no response and when the sounds from within ceased, one of the officers opened the door three or four inches to the point where it was held by a safety chain. Thereupon, one of the officers again announced that they were federal officers with a search warrant and when they again received no response, an officer struck the door and chain with a sledge hammer, causing the door to open. After thus gaining admission to the apartment, one of the agents rushed to the bathroom, where he saw appellant Ruffin throw or drop a shiny object into the toilet and attempt to flush it and its contents (a white powder) down the drain. Reaching into the toilet bowl as it was being flushed, the agent produced a shiny object (tin foil) and some of the white powder, later found to contain heroin. Milk sugar, a measuring spoon, a sifter and two playing cards belonging to Sykes were found together on his bed and were taken as evidence. Also seized was a small mirror sprinkled with what later proved to be heroin. Luther Williams and Sykes were in the apartment and they along with Ruffin were taken into custody.

Although appellants and Williams testified that they heard no announcement of any kind before the officers began pounding on the door with the sledge hammer, the court was not required to and did not believe appellants' version of what had transpired. Since there was substantial evidence from which the court could find that the officers complied with the legal requirements before they resorted to force, we hold that the search warrant was legally executed.

■ Notwithstanding the validity of the search warrant and the legality of its execution, we conclude that as a matter of law the evidence was insufficient to support Ruffin's conviction for illegal transportation of narcotics under Count One. Informer Williams and appellant Ruffin spent about four days in Chicago during the latter part of April, 1961. During his stay in Chicago, Williams talked to a narcotic agent in St. Louis by phone on three occasions and testified that he told the agent "we didn't have no (sic) money to buy no (sic) drugs with." On April 26 Williams and Ruffin returned to St. Louis by Greyhound bus and upon their arrival at the bus station in St. Louis shortly after 12 o'clock noon, were seen alighting from the bus by federal narcotic agents. The bus did not make any passenger stops after crossing the Illinois-Missouri state line. The agents followed Williams and Ruffin from the bus station to the Pruitt

Housing Project but momentarily lost sight of them on at least two occasions. Shortly thereafter, the agents entered Apartment 703, 2210 Biddle Street (Pruitt Housing Project) and, as previously mentioned, there discovered a quantity of heroin. On April 27, the day after the search, Williams made a statement in writing to one of the narcotic agents in which he stated, in effect, that he and Ruffin had obtained narcotics in Chicago and had brought them from that city to St. Louis on April 26. For reasons not clear from the record, between April 27, when the statement was made, and May 19, when the pre-trial hearing on the motion to suppress the evidence was commenced, Williams ceased cooperating with the Government officials, and his testimony at the pre-trial hearing was contrary to his prior statement, including that portion relating to the crucial question of transportation of narcotics. This change of attitude persisted, and when the case was tried on the merits on October 16, 1961, the Government did not even offer Williams as a witness. He did testify, however, on behalf of appellants and categorically denied that he had personally brought narcotics from Chicago to St. Louis and was equally positive that Ruffin "did (not) bring a package back." [1]

 Faced with the dilemma of not being able to establish by direct evidence that narcotics were transported, the Government takes the position that the facts and circumstances above related are sufficient to support an inference that Ruffin committed the offense which is the subject of Count One of the information. We are not so persuaded. The principle is firmly established that unless there is substantial evidence excluding every other hypothesis but guilt, a submissible case is not made, and, where all the evidence is as consistent with innocence as

with guilt, the reviewing court must reverse a judgment of conviction. Salinger v. United States, 8 Cir., 23 F.2d 48, 52 (1927); Tri-Angle Club, Inc., v. United States, 8 Cir., 265 F.2d 829 (1959); 20 Am.Jur., Evidence § 1217 (1939); 23 C.J.S. Criminal Law § 907c (1961).

The fact that heroin was found in the possession of Ruffin on April 26, 1961, and that he and a government informer traveled from Chicago to St. Louis on that day, the sole circumstances upon which the government must rely, do not, in our view, exclude every other hypothesis but guilt. The facts and circumstances are just as consistent with the hypothesis that the seized heroin was not the subject of interstate transportation by Ruffin, but was brought into the apartment from another source prior to April 26. Indeed, it was the probability of other heroin being so present in Sykes' apartment on which the government's right to issuance and execution of the search warrant involved was predicated, since the warrant was obtained before the Chicago trip occurred.[2] Since the jury was required to indulge in speculation and to build inference upon inference in order to find Ruffin guilty under Count One of the information, we cannot allow the conviction for illegal transportation to stand.

 Unlike the speculative circumstances presented in support of the charge against Ruffin for transportation of narcotics, the evidence to support the charge of illegal concealment was adequate and sufficient to justify the convictions of both Ruffin and Sykes under Count Two. The evidence which we have heretofore reviewed in considering the legality of the search and seizure and other pertinent circumstances in the record afforded proof that: (1) Ruffin was illegally in the possession of heroin in Sykes' apartment; (2) Ruffin attempt-

---

1. The statement made by Williams on April 27 could not be considered as evidence at the trial on the question of transportation of narcotics, and was introduced by the Government only for the purpose of impeaching the credibility of Williams upon cross-examination.

2. The date of the issuance of the warrant was not before the jury, but is part of the record before us.

ed to dispose of the heroin when the federal officers entered the apartment; (3) articles and paraphernalia normally used in the process of diluting heroin were found together on Sykes' bed within his apartment; (4) a mirror belonging to Sykes and impressed with Ruffin's left thumb print was found in the apartment, identified as a suitable instrument for the dilution process, and upon analysis found to be sprinkled with particles of heroin; and (5) Sykes and Ruffin failed to admit the officers after their authority and purpose had been announced. The absence of the proscribed drug on the person of Sykes is not fatal to sustaining his conviction. Under the evidence viewed in the light most favorable to the government, the jury was justified in determining that Sykes was guilty under Count Two.[3] See and compare Rodella v. United States, 9 Cir., 286 F.2d 306 (1960), cert. denied, 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961); Bourg and Ledet v. United States, 5 Cir., 286 F.2d 124 (1960), reversed and remanded upon discovery of new evidence, Ledet v. United States, 5 Cir., 297 F.2d 737 (1962); United States v. Montalvo, 2 Cir., 271 F.2d 922 (1959), cert. denied, 361 U.S. 961, 80 S.Ct. 589, 4 L. Ed.2d 543 (1960); Bellah v. United States, 5 Cir., 256 F.2d 958 (1958).

■ Appellants also complain of the admission of certain testimony and of a portion of the court's charge to the jury. We find no merit in these contentions and conclude that the questioned testimony was not prejudicial to appellants and that the disputed instruction, not objected to at the time the case was submitted to the jury, was not erroneous when viewed in light of the entire charge and that it did not mislead the jury.

Appellant Ruffin's conviction for illegal transportation is reversed with directions to dismiss Count One of the information. The convictions of appellants Ruffin and Sykes under Count Two are affirmed.

Reversed as to count one.

Affirmed as to count two.

3. Included in the charge to the jury was the following quotation from 18 U.S.C.A. § 2:
"Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

"Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such."
The facts justified the jury in finding Sykes guilty under the aiding and abetting statute even if it did not find him to be a prime instigator of the concealment.